By the Court.—O’Gorman, J
.The material facts, as they appeared in evidence at the trial, are substantially these: An action was brought in the supreme court of this judicial department, by the Bank for Savings, the present defendant herein, on the ground that different persons had laid claim to a sum of money amounting to $1,469, which had been deposited in the Bank for Savings in 1827, by one Jacob Kniffer ; and in this action these several claimants, and also Michael A. Gearon, the attorney of one of them, named Lancaster, were made defendants. This Lancaster had been appointed administrator of Kniffer’s estate, and the money had been paid over to Michael A. Gearon, his attorney, and was in the possession of Gearon. A motion in this action for the appointment of a receiver was made and granted on December 27, 1882, and an order was also made requiring Michael A. Gearon to pay the money into the hands of the receiver within five days. Difficulty was experienced in making service of this order on Michael A. Gearon. At last, service was made on a person then supposed to be Michael A. Gearon, and the money not having-been paid into the hands of the receiver, in obedience to this order, a warrant of attachment was issued directing the sheriff to attach the person of. said Michael A. Gearon, and *270 to produce him before the court. The sheriff’s officer having charge of the execution of this attachment, applied to the attorneys of the Bank for Savings, the plaintiffs in that action, for instructions, and they sent with him one of their clerks to an office in Pine street in this city, wffiere the sheriff’s officer, acting under the instructions of this clerk, arrested the plaintiff in the present action, being informed by said clerk that the person so arrested was Michael A. Gearon, and plaintiff was held in custody by the sheriff all night and until the next morning, when he was discharged on proof that he was not Michael A. Gearon, the person named in the attachment, but his brother Miles Gearon, the plaintiff in the present action.
There was no evidence of any special authority, either express or implied, from the Bank for Savings, the plaintiff in that action, to their attorney, or to the sheriff, to arrest Miles Gearon; nor was there any subsequent ratification by the bank, of the act of the sheriff, or of their attorneys, after knowledge of that event.
The trial judge dismissed the plaintiffs’ complaint in the present action, on the ground that there had been no proof of any authority from the Bank for Savings, the present defendant, to arrest Miles Gearon, the present plaintiff ; and the question now to be discussed, is whether, in the absence of such proof, the present defendant can be held responsible for the act of their attorneys in instructing the sheriff to arrest the plaintiff Miles Gearon, the order of attachment having directed that officer to arrest Michael A. Gearon.
The case of Guilleaume v. Rowe (48 Super. Ct. 169), although not in all its features resembling the case at bar, yet contains a valuable statement of the rules of law applicable to cases of this kind. The attorneys of the defendants there, in an action brought by them against Guilleanme, caused to be .issued, without any authority of law, an execution against his person, and under that execution Guilleaume was arrested and held in custody. He brought an action for false imprisonment against the persons who *271 had employed the attorneys. The learned trial judge dismissed the complaint on the ground that, conceding the execution against 'Gruilleaume to be void for want of jurisdiction, there was no evidence showing that the defendants authorized the issue of the execution, or the arrest of the plaintiff Gruilleaume.
The court at general term held that the case should have gone to the jury, and ordered a new trial, on the ground that “ the evidence established that the attorneys who issued the execution against the person of Guilleaume, had acted as the attorneys of the defendants all through the litigation, before and after judgment, and that that was sufficient to make them prima facie the agents of the defendants ; for unless restricted, the attorney has plenary power in the prosecution of the suit to judgment and execution, and in these respects his acts bind and conclude his client.” The court further says, “ that in such a case, the authority may be8deduced from the nature of the employment, which is to collect the claim by legal process .... As a general rule, a principal is liable for such wrong of his agent as is committed in the course of his employment, as for the benefit of his' principal, and this, although no express command or privity be shown.”
In that case, this familiar rule of law, that the principal is responsible for the act of his agent acting within the scope of his authority, was properly applied, for the attorneys were employed to bring suit against Gruilleaume, and the wrong done him by his unlawful arrest was done in the course of that employment, and was within the attorney’s plenary power in the prosecution of that suit. But the court, in its opinion, goes farther, and describes the circumstances, in which the act of the attorney under the plenary power to conduct the suit, would not bind the client. “ It is only,” says the court, “when, after having issued execution, the attorney undertakes to give special directions for •its enforcement in a manner not warranted by the language of the writ, and when the officer may justly decline to take the responsibility, in the absence of indemnity, that the *272 client can be held only on proof of special authority to the agent, express or implied, or of subsequent ratification, with knowledge of the facts.” In these terms, the court describes, as I think, the state of facts in the case at bar, and supplies the true test of the responsibility of the client for the act of his attorney, and marks out the limits within which the plenary power df the attorney, under his ordinary retainer, is confined.
In the case at bar, the attorneys were employed by the Bank for Savings to bring suit against Michael A. Gearon. If, in the course of that employment, they arrested Michael A. Gearon, and arrested him wrongfully, that act would have been within the course of their employment, and their clients would have been responsible (Poucher v. Blanchard, 86 N. Y. 263). But if they had brought suit, not against Michael A. Gearon, but against Miles Gearon, and caused Miles Gearon to be arrested, these acts would have been outside their employment, which was only to sue Michael A. Gearon, and their clients (the Bank for Savings) would not have been responsible. So also, if in the action properly brought by them against Michael A. Gearon, they had caused a writ to be issued against Miles Gearon by name, and caused him to be unlawfully arrested, that act would have been outside the course of their employment, and their clients would not have been responsible, because their clients had never employed them to molest Miles Gearon in any way.
In the case at bar, they caused an attachment issued by the court to take the person of Michael A. Gearon to be unlawfully executed by taking the person of Miles Gearon. That was, in my opinion, an act also outside the limits .of their employment, and for which their clients were not responsible.
Indeed, on the issue of the attachment and its delivery to the sheriff for execution, the employment of the attorneys, as to that attachment, ceased. They had done all their duty in that matter. It was no part of their duty to instruct the sheriff how the attachment should be fexecuted. *273 That was the sheriff’s duty, not theirs. With the writ of the court in his hands, directing him to arrest Michael A. Gearon, he was bound, in the course of his employment as sheriff, to look to it that he arrested Michael A. Gearon, and no one else, under that writ. He was under no obligation to obey the orders of the attorneys for the plaintiff in that action as to that writ, but only the orders of the court; and if he arrested a wrong man, he was responsible, and the fact that the attorneys for the plaintiff in that action had told him to arrest a man other than Michael A. Gearon, would be no justification.
In my opinion, the case is one precisely- similar to that described in the latter part of the opinion of this court in Guilleaume v. Rowe (supra). Here, the attorneys of the Savings Bank, after having issued the writ, undertook to give special directions to the sheriff for its enforcement, in a manner not warranted by the language of the writ, and to enforce it in such a manner that the sheriff would have been justified in declining to take the responsibility in the absence of indemnity ; and here, as in the case supposed in the opinion in Guilleaume v. Rowe, the client (the Savings Bank), could be held only upon proof of special authority to their attorneys, express or implied, or of subsequent ratification. There is, in the case at bar, no evidence whatever of such special authority or ratification.
An analogy exists between cases of unlawful seizures of goods under process, and unlawful arrests of the person. In Welsh v. Cochran (63 N. Y. 182), the plaintiff sued for an alleged unlawful seizure and conversion of his property. It was seized under a warrant issued in bankruptcy proceedings, and directing the taking of goods belonging to persons other than the plaintiff. The defendants were the petitioning creditors, and the warrant was issued at their instance, and the marshal acted under the instructions of their attorneys in making the seizure. The trial judge directed a verdict for the plaintiff. The court of appeals reversed the judgment, and ordered a new trial. I find in the opinion of that court the following expressions, which *274 apply to the case at bar: “ The warrant issued at the instance of the defendants only authorized the seizure of the goods of the bankrupt named therein, and not goods in possession of the plaintiff. The defendants were not present at the taking, «and did not in person, direct or interfere with the persons committing the trespass on the plaintiff. They may ,4have put the officers in motion, but the authority from defendants which the law would imply was only co-extensive with that conferred by the warrant, and to do only lawful acts pursuant to the warrant. The law will not presume an authority from the defendants to do an unlawful act .... The presence of the attorney for the defendants at the seizure of the goods, and his directions to the officers, did not make the defendants liable for the tortious act. In the absence of proof of special authority to an attorney, his acts in directing the levy on, or the taking of goods on process, are in excess of his general powers as an attorney, and do not subject his client to liability.”
Recent English decisions exhibit a similar tendency to the restriction of the implied authority of the attorney to impose liability on the client. The client is not held liable for a fraudulent defense put in by his attorney (Williams v. Preston, 47 L. T. Rep. N. S. 265). The client is not liable for the act of his attorney in directing the sheriff on what goods to levy (Smith v. Keal, 46 L. T. Rep. N. S. 770).
The cases cited by the learned counsel for the plaintiff, in his brief, do not, in my opinion, give any real or effectual support to the plaintiff’s claim in this action, and in none of them are the facts similar to those in the case at bar.
Here the action of the attorneys of the Bank for Savings, in directing the sheriff to arrest Miles Crearon, the plaintiff in this action, was outside the scope of their employment, and outside of the general authority presumed to have been conferred on them by the defendants. Their directing the arrest of a man, other than the man named in the order of attachment, was wholly unlawful, and defendants cannot be presumed to have authorized an unlawful act. The presumed lawful authority of the attorneys of *275 the Bank for Savings, as to the order of attachment, was at an end the moment it was delivered to the sheriff for execution. The sheriff’s authority and his functions then began. They had no right to direct him in the execution of the writ, and he was not under their control as to the manner of executing it. In the execution of his official duty, he acted at his peril; and their direction that he should arrest the wrong man would be neither justification nor protection to him.
The facts, as they appeared in the evidence in this case, were clear, and no difference of opinion depending on different deductions or inferences could arise, requiring the decision of the jury.
The burden of „ proving special instructions from the Bank for Savings, the defendants here, to their attorneys, or to the sheriff, to arrest the plaintiff, was on the plaintiff, and no such proof was given. The dismissal of the complaint was, therefore, proper.
The judgment appealed from should be affirmed, with costs.
Freedman, J., concurred.